**C. J. MONTAG AND SONS, INC., and Argonaut Insurance Company, Plaintiffs,**

v.

**J. J. O'LEARY, Deputy Commissioner, Fourteenth Compensation District Bureau of Employees' Compensation, U. S. Department of Labor, Defendant,**

v.

**Janice K. INGLES, Intervenor-Defendant.**

Civ. No. 68-228.

United States District Court
D. Oregon.

May 5, 1969.

Gray, Fredrickson & Heath, Lloyd W. Weisensee, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., Jack G. Collins, Asst. U. S. Atty., Portland, Or., for defendant O'Leary.

Pozzi, Wilson & Atchison, Portland, Or., for intervenor-defendant.

## OPINION AND ORDER

SOLOMON, Chief Judge:

This is an action to recover benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 902. Frank K. Dahl was employed by plaintiff Montag to help construct a fish ladder at Willamette Falls on the Willamette River near Oregon City. He was killed while trying to move a tractor off a barge. The barge had carried the tractor upstream to the working area. Montag filed notice with the Oregon Workmen's Compensation Board, and, without a request from Dahl's survivors, plaintiff Argonaut, Montag's insurer, promptly began making payments to them under State law.

Dahl's survivors filed a claim with the United States Department of Labor for benefits under the Longshoremen's and Harbor Workers' Compensation Act several months after Argonaut commenced its periodic payments under State law. The Federal Act applies only if an accident occurs on navigable waters, 33 U.S.C. § 903(a), and if the employer has employees engaged in maritime employment, 33 U.S.C. § 902(4). A Deputy Commissioner granted the Federal benefits, allowing plaintiffs a credit for amounts paid under State law. Plaintiffs seek to review the Commissioner's ruling, and the Commissioner has moved for summary judgment. Dahl's survivors intervened alleging that the Commissioner erred in computing the benefits due under the Federal Act.

Plaintiffs assert that the Commissioner lacked jurisdiction because the accident did not occur in navigable waters. The accident occurred in the tailrace of plants owned by Crown Zellerbach Corporation and Portland General Electric Company. The tailrace was the "stream" formed by water returning to the Willamette after it had been diverted for use in the plants. I find that the tailrace was a navigable water. The photographs offered as exhibits show it to be of substantial size, and the Commissioner heard undisputed testimony that barges from 60 to 130 feet long and 18 to 28 feet wide frequently operated in the area of the accident. The Willamette River has been held navigable on numerous occasions, and this result is not changed by the presence of the two plants which reduce the flow of the river in the tailrace. In Rochester Gas & Elec. Corp. v. Federal Power Commission, 344 F.2d 594 (2d Cir. 1965), the Court held that a river is navigable "if (1) it *presently* is being used or is suitable for use, or (2) it has been used or was suitable for use in the *past*, or (3) it could be made suitable for use in the *future* by reasonable improvements." *Id.* at 596. The Court held that evidence of use from 1812 to 1840 was sufficient to support a finding of navigability in 1965. See also Marine Stevedoring Corp. v. Oosting, 398 F.2d 900 (4th Cir. 1968). In Morrison-Knudsen Co. v. O'Leary, 288 F.2d 542 (9th Cir. 1961), the Court held that an artificial tunnel used solely to divert the Snake River during construction of a dam was a navigable river. The facts showed that the tunnel had been completely closed following completion of the dam and that only five per cent of the river's

water went into the tunnel, solely through seepage between rocks used to close it.

Montag next contends that it did not have any employees engaged in maritime employment as required by 33 U.S.C. § 902(4). Montag leased, rather than owned, the barges used to transport materials to the jobsite. It hired a towing company to supply the tugs and pilots. Dahl, the deceased employee, worked as a laborer for Montag, although he performed work ordinarily done by a longshoreman or stevedore when he tried to move the tractor from the barge to the land. A tug pilot testified that Montag employees frequently helped move material from barges to the land.

 Montag argues that Dahl's work in moving the tractor was in the "twilight zone" between maritime and nonmaritime employment, and the State compensation laws could therefore be applied consistently with the Federal Constitution. It relies on Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942). In *Davis*, a workman was killed while dismantling a bridge. The Supreme Court held that the State could apply its workmen's compensation statute. The Court said that the work was in the "twilight" between maritime and nonmaritime employment, but the decision was based primarily on the fact that there had been no Federal administrative hearing. The Court acknowledged that a Commissioner's ruling would be entitled to presumptive validity, and that it would be reversed only by substantial evidence. There are two important differences between this case and *Davis*. First, the Commissioner here issued a ruling and made an award, both of which are presumptively valid. Second, it was foreseeable to Montag that its employees would perform traditional maritime work. It leased barges and hired a towing service in order to perform the contract. Its employees frequently helped unload the barges. Plaintiff also relies on Hahn v. Ross Island Sand & Gravel Co., 358 U.S. 272,

79 S.Ct. 266, 3 L.Ed.2d 292 (1959). There, the employer was engaged in dredging operations. An employee was injured while unhooking a cable which had been used to carry a hopper from one barge to another. The employee's usual duties were to maintain machinery anchored to the land; on the day he was injured he was asked to assist with the hopper cable. The Court held that the employee could recover under State law. The Court found that the employer could not have predicted in advance which compensation law would apply. Several cases following *Davis* have held the twilight zone doctrine applicable where the employee's duties are not uniquely maritime. *E. g. Moores'* Case, 323 Mass. 162, 80 N.E.2d 478 (1948), aff'd. sub nom Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948). In *Hahn*, which is in this group, the employee was regularly employed to repair machinery. This case is distinguishable from those in which employees regularly assist in unloading barges. There is ample evidence to support the Commissioner's finding that Montag's employees were engaged in maritime employment.

 Montag contends that the claimants have waived their rights under Federal law by voluntary acceptance of the State benefits. Since I have affirmed the Commissioner's ruling that the Federal compensation statutes provided the exclusive remedy, Montag's defense of waiver is clearly without merit. Western Boat Building Co. v. O'Leary, 198 F.2d 409 (9th Cir. 1952).

Decedent's widow intervened, alleging that upon her remarriage the Commissioner erroneously reduced the compensation award he had previously made to the decedent's children.

I have reserved this issue. Unless, within 30 days, the Commissioner or the plaintiffs challenge this claim and request a hearing, the Commissioner's award will be modified to conform with the prayer of the petition in intervention.