**Raymond GASPARD, et al.**

v.

**OFFSHORE CRANE AND EQUIPMENT, et al.**

**Civil Action No. 94–0261.**

United States District Court, E.D. Louisiana.

Feb. 14, 1996.

Danny J. Lirette, Houma, LA, for plaintiffs.

Robert E. Couhig, New Orleans, LA, Timothy F. Burr, New Orleans, LA, Douglas Longman, Jr., Lafayette, LA, Michael Lemoine, Lafayette, LA, Donald Collins, New Orleans, LA, for defendants.

## *ORDER AND REASONS*

BERRIGAN, District Judge.

Defendant Anglo–American Insurance Company, Ltd. ("Anglo–American") has moved for summary judgment dismissing the third-party demand of Chevron U.S.A. Inc. ("Chevron"). For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

This litigation arises from a serious injury suffered by Raymond Gaspard. Gaspard was working as a roughneck for Nabors Drilling U.S.A., Inc. ("Nabors"). Chevron had hired Nabors to perform workover services on a Chevron platform in the Gulf of Mexico. Chevron had also entered into a Blanket Time Charter with Seacor Marine, Inc. ("Seacor") under which Seacor's vessel, the M/V LONG ISLAND, was used to transport cargo to the platform. The M/V LONG ISLAND was tied to the platform when Gaspard and others were sent down to the vessel to assist in the offloading of drill collars. The workers were to rig a sling from Nabors' crane located on the platform to the drill collars. For reasons that have yet to be determined, the fast line of the crane was activated, pulling the line and the headache ball up to the crane's sheave, causing the line to break. The line and headache ball fell on Gaspard, amputating both of his legs.

Gaspard brought suit against the manufacturers and inspectors of the crane, as well as Seacor and Chevron. He subsequently voluntarily dismissed Seacor. Gaspard's specific allegations against Chevron relate only to the operation of the crane and the platform, not to the operation of the Seacor vessel. His complaint alleges that Chevron is at fault for:

a. Failing to inspect the crane in question in accordance with its own crane safety program.

b. Improper or negligent inspection of the crane and anti-two block system [a safety device on the crane]; [and]

c. Having custody and control of a defective and unsafe crane....

Amended Complaint, ¶ 12. The complaint further alleges that:

Platform B, including the workover rig and the Unit Mariner Crane 10,000, constituted a "building" or other immovable under circumstances in which the fall of the headache ball and the failure of the anti-two blocking device and other facts of the accident constitute a "ruin" cause by vices in its construction, an improper design, and/or failure to repair it, all within the

meaning of La.Civ.Code Art. 2322, so as to make defendant, Chevron, responsible for the loss and damage caused to petitioners. *Id.* ¶ 13.[1]

Pursuant to an indemnity provision in the parties' time charter, Chevron filed a cross-claim against Seacor. The time charter requires Seacor to indemnify Chevron for any liability:

> arising out of or in anyway directly or indirectly connected with the performance of service under this agreement or the ownership ... operation ... loading or unloading of cargo ... or navigation of the vessel....

Despite the broad language of the indemnity provision, this court previously ruled that Seacor does not have a duty to indemnify Chevron. *Gaspard v. Offshore Crane and Equipment, Inc.,* No. 94–0261, 1995 WL 144592 (E.D.La. Mar. 31, 1995). Applying *Lanasse v. Travelers Ins. Co.,* 450 F.2d 580 (5th Cir.1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972), the court concluded that any liability Chevron may face does not arise from the operation of Seacor's vessel, and that the charter party indemnity agreement does not apply to liability arising from the operation of Chevron's platform.

Chevron subsequently filed a third-party complaint against Seacor's marine insurer, Anglo–American. The Chevron–Seacor time charter required Seacor to maintain protection and indemnity ("P & I") insurance naming Chevron as an additional assured. Seacor's policy with Anglo–American complies with the time charter, providing P & I coverage for the M/V LONG ISLAND and naming Chevron as an additional assured. The policy terms incorporate those contained in the P & I standard "SP–23" form, which states:

> The Assurer hereby undertakes to make good to the Assured ... all such loss

and/or damage and/or expense as the Assured shall *as owners of the vessel named herein* have become liable to pay and shall pay on account of the liabilities, events and/or happenings herein set forth.

Policy, Sect. C(I), p. 9; 7A *Benedict on Admiralty* § 2.01 at 2–3 (Rel.28–7/82) (emphasis added). The time charter, however, requires modification of the standard coverage clause—it requires the deletion of the phrase "as owner of the vessel named herein." Seacor's policy accommodates the change, stating:

> The so-called Other than Owner, as Owner and/or Other Insurance clauses contained in this Policy shall be deemed deleted as may be required by contract.

> Notwithstanding the above, if claim is made by anyone other than the owner and/or operator of the vessel(s) insured hereunder, such person or entity shall not be entitled to a broader scope of coverage than would the owner and/or operator had claim been made by the owners and/or operator as an Assured hereunder.

Policy, Sect. 12, p. 41. Anglo–American has moved for summary judgment, alleging that the policy it issued Seacor does not provide coverage to Chevron.

## DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FRCP 56(c). The facts are not in dispute with regard to this motion. Instead, the court must interpret the provisions of the Anglo–American policy.

Chevron alleges that based on the deletion of the "as owner" language, the policy extends coverage to it in its capacity as a platform owner.[2] Before delving into the

---

**1.** Gaspard's allegation of liability for "[a]ll other fault, negligence and strict liability which may be discovered or proven at trial" is not considered when determining a duty to defend. The court considers only the factual allegations of the complaint. *Jensen v. Snellings,* 841 F.2d 600, 612 (5th Cir.1988); *see Storebrand Arendal A/S v. Point Marine, Inc.,* 1990 AMC 2689, 1990 WL 66401 (E.D.La.1990), *aff'd,* 923 F.2d 853 (5th

Cir.1991) (application of state law to determine marine insurance coverage).

**2.** Chevron also points to policy coverage for liability "arising out of, or having relation to the Assured's chartering, brokering, towing, berthing, servicing, operating, maintenance and/or use of vessels (including loading and/or unloading)." Policy, Sect. II(1), p. 10. The court's previous

terms of the policy and the applicable case-law, the court must first take note of the effect of Chevron's argument. Seacor maintained P & I insurance naming Chevron as an additional assured based on Chevron's time charter of Seacor's vessel. It is axiomatic that P & I coverage is vessel-related.[3] Based on the plaintiff's complaint, the court has already ruled that any liability Chevron may face arises from the operation of the crane on its platform, not from the operation of the Seacor vessel. Chevron's argument would transform a policy procured to cover the use of a time-chartered vessel into a liability policy for the alleged ruinous condition of one of its offshore platforms. Such coverage could not have been within the intent of the parties to the policy.

With regard to the terms of the policy, the dispositive issue is the meaning of the phrase "as owner of the vessel" and the significance of its deletion. At first blush, the phrase as used in the SP–23 form would seem to refer to the legal control an assured exercised over a vessel. For instance, when deciding whether a time charterer qualified as the owner of a vessel for the purposes of P & I coverage, some courts have looked to the statutory definition of a vessel owner in the Longshore and Harbor Workers Compensation Act. *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1041 (5th Cir.1983) ("It is undisputed that Mobil, as time charterer of the vessel, would normally be covered under the broad definition of 'vessel owner' under 33 U.S.C. § 902(21)."); *accord Randall v. Chevron U.S.A., Inc.,* 788 F.Supp. 1398, 1405 (E.D.La. 1992), *rev'd in part,* 13 F.3d 888 (5th Cir. 1994). More recently, however, the Fifth Circuit has opted for the fact-based inquiry first enunciated in *Lanasse, supra. Randall v. Chevron U.S.A., Inc.,* 13 F.3d 888 (5th Cir.1994), *modified on other grounds,* 22 F.3d 568 (5th Cir.1994), *cert. denied,* —— U.S.

——, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994). Under *Randall,* if the assured's liability arises from its conduct as time charterer of a vessel, it will be considered an owner of the vessel for purposes of P & I insurance. In other words, a "causal operational relation" between a time charterer's negligent operation of a vessel and a plaintiff's injury must exist in order to trigger coverage under a P & I policy: "[W]hen the time charterer exercises th[e] right [to direct a vessel's movements] negligently, it has committed negligence 'as owner' of the vessel within the meaning of that phrase in a marine insurance policy." 13 F.3d at 906–09. Under the policy at issue in *Randall,* Chevron would *not* qualify as an owner for purposes of P & I coverage because any potential liability arises from platform, not vessel operations. *Lanasse,* 450 F.2d at 584 ("[I]t was Chevron's actions as a platform operator or as a crane operator that caused the harm, and that does not make it a liability of a shipowner.")

The key distinction between this case and *Randall* is the deletion of the "as owner" language. If "as owner" coverage depends on the facts surrounding the accident, then deletion of the "as owner" language would seem to remove the facts of the accident from the determination of coverage. A "causal operational relation" would no longer have to exist to trigger coverage. This is precisely the conclusion reached by the Fifth Circuit in *Helaire v. Mobil Oil Co.,* 709 F.2d 1031 (5th Cir.1983). *Helaire* also involved an accident aboard a time chartered vessel which was unloading materials onto the time charterer's offshore platform. The plaintiff in *Helaire* slipped and injured his knee while attempting to unload casing from the vessel in heavy seas. Mobil Oil owned the platform, was the time charterer of the vessel, and was

---

conclusion on the indemnity issue applies with equal force here. Because Chevron's potential liability does not arise from the operation of the Seacor vessel, this part of the policy does not afford coverage.

**3.** The Anglo–American policy and the SP–23 form are replete with the term "vessel;" *Wiley v. Offshore Painting Contractors, Inc.,* 711 F.2d 602, 613, n. 23 (5th Cir.1983), *withdrawn on other grounds,* 716 F.2d 256 (5th Cir.1983) ("A marine

P & I ... policy covers liabilities for loss, damage or expense incident to the ownership, operation or use of a vessel."); Raymond P. Hayden and Sanford E. Balick, *Marine Insurance: Varieties, Combinations, and Coverages,* 66 Tul.L.Rev. 311, 325 (1991) (P & I "was developed to provide protection to shipowners for losses arising in connection with the operation of their vessels.")

an additional assured on the vessel owner's P & I policy. The court found that Mobil was entitled to coverage because the accident was vessel-related, thus satisfying the "causal operational relation" test of *Lanasse, supra:*

> In the instant case, nothing happened on the platform to cause the accident. The negligence with which Mobil was charged was based on its actions or omissions in permitting the unloading of cargo on the vessel to continue despite the obvious danger created by the poor weather conditions.

*Helaire,* 709 F.2d at 1042 (footnote omitted). Despite the fact that it found coverage based on the nature of the accident, the court proceeded to address the deletion of the "as owner" language from the P & I policy:

> [E]ven assuming that Mobil's liability may have arisen from its status as platform operator, indemnification was still properly awarded.... The words "as owner of the vessel herein" were deleted from the policy. The district court found that this deletion was intended to provide coverage for Mobil regardless of the capacity in which it was sued. Certainly this finding was not clearly erroneous. The policy ... makes no distinction between coverage for unloading activities on the one hand and platform activities on the other. Consequently, the court's indemnification order is proper regardless of whether Mobil incurred liability as a "vessel owner" or as a "platform operator".

*Id.* (footnote omitted).

*Helaire,* however, is distinguishable because it does not refer to any policy provision limiting the scope of the "as owner" deletion. In contrast, Seacor's policy specifically states that notwithstanding the deletion of the "as owner" language:

> [I]f claim is made by anyone other than the owner and/or operator of the vessel(s) insured hereunder, such person or entity shall not be entitled to a broader scope of coverage than would the owner and/or op-

erator had claim been made by the owners and/or operator as an Assured hereunder.

This clause also provides the key to interpreting the meaning of the "as owner" language in this specific policy.[4] Reading this clause in conjunction with the coverage language of the SP–23 form, *supra,* the court finds that the policy does not define "owner of the vessel" in terms of the operational relationship between the assured's negligence and the damage claim. The limiting clause refers to a claim by *"anyone other than* the owner and/or operator of the vessel(s)." The "as owner" language refers to the relationship between a claimant and the vessel, not to a fact-based inquiry into the source of the damages at issue. The deletion of the "as owner" language from Seacor's policy simply expands coverage to a claimant who is not an owner or operator of the vessel; it does not expand the coverage otherwise available to a covered owner or operator.

Even if the clause is read according to the operational relationship test, it still would not afford coverage to Chevron. If Chevron makes a claim as owner of the platform, as opposed to an owner/operator of the vessel, the clause still limits the scope of coverage to that otherwise available under the policy. The policy provides coverage for an accident arising from the use of one of Seacor's vessels. As the court has already concluded, the accident did not arise from the use of the Seacor vessel. To conclude that the deletion of the "as owner" language expands coverage to Chevron based on its operation of the platform would ignore the plain language of the limiting clause.

Accordingly, **IT IS ORDERED** that Anglo–American Insurance Company, Ltd.'s motion for summary judgment dismissing the third-party demand of Chevron U.S.A. Inc. is **GRANTED.**

---

4. Under general principles of contract, the insurance policy is the law between the parties. In construing the policy, the court must "read together and harmonize[ ]" the different provisions of the policy. *Employers Ins. of Wausau v. Trotter Towing Corp.,* 834 F.2d 1206, 1210 (5th Cir. 1988).